IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**NORTH COSTA, LLC,**
    Plaintiff,

v.

**115 MANAGEMENT, INC.** *et al.*,
    Defendants.

Civil No. 20-1468 (BJM)

## OPINION AND ORDER

Plaintiff North Costa, LLC ("North Costa") sued defendants 115 Management, Inc. based in California ("115-California") and its agent, Matthew Bentley Hoover ("Hoover"). Docket No. ("Dkt.") 1. North Costa then amended its complaint to add 115 Management, Inc. based in Texas ("115-Texas") and the president, managing director, owner, or principal of both corporate entities, Derrick Armstrong ("Armstrong"). Dkt. 4. North Costa alleged breach of contract in violation of Puerto Rico's Civil Code against 115-California and 115-Texas, deceit in violation of 31 L.P.R.A. § 3408 against all defendants, and breach of the covenant of good faith and fair dealing in violation of 31 L.P.R.A. § 3375 against all defendants. Dkt. 1; Dkt. 4. North Costa later voluntary dismissed its claim against Hoover, Dkt. 18, and filed its second amended complaint against 115-California, 115-Texas, and Armstrong. Dkt. 41. This case was referred to me upon the parties' consent. Dkt. 46. Defendants moved for a stay of proceedings, with North Costa's consent, while the parties worked to settle the case. Dkt. 51. The parties reached a settlement agreement, Defendants breached the agreement, and North Costa moved to lift the stay. Dkt. 53. Defendants' lawyers moved to withdraw from the case, Dkt. 54, Dkt. 59, and I granted their request. Dkt. 60. Because new counsel failed to appear on behalf of the corporate defendants, and Armstrong failed to appear *pro se*, I granted an order for entry of default in favor of North Costa. Dkt. 61. North Costa now moves for default judgment. Dkt. 63.

## DEFAULT JUDGMENT STANDARD

After an entry of default has been made, "the court . . . may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcón v. Autoridad de Energía Eléctrica*, 301 F.3d 1, 2 (1st Cir. 2002) (citing *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992)). The party in default "is taken to have conceded the truth of th[ose] factual allegations." *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999). The plaintiff's claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). Default can only establish a defendant's liability, so plaintiffs must establish the extent of the damages resulting from the defendant's violations. *See Eisler v. Stritzler*, 535 F.2d 148, 153–54 (1st Cir. 1976). A post-default hearing to determine the plaintiff's award is necessary if the amount of damages is in dispute or not ascertainable from the pleadings. *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 n.12 (1st Cir. 1999).

## BACKGROUND

North Costa alleged that, in early April 2020, its representatives spoke with Armstrong and Hoover, who represented 115-California and 115-Texas, which imported personal protective equipment into the United States. Dkt. 41 ¶ 20. On April 13, representatives from North Costa and 115-California began communicating via a WhatsApp chat titled "Kn 95 for PR." *Id.* ¶ 21; Dkt. 41-12. During these communications, North Costa requested FDA compliance and quality control documentation for 115-California's masks. *Id.* ¶ 23; Dkt. 41-1. North Costa also requested product packing specifications and photographs of the goods, which Armstrong provided. *Id.* ¶ 24; Dkt. 41-2.

On April 16, 2020, North Costa purchased 48,000 FDA-approved KN95 respirator masks from 115-California, to be delivered per specifications agreed to by the parties. Dkt. 41-3.

Specifically, North Costa's purchase order outlined product packing specifications stating, "50 units / box x 40 boxes per master case x 8 master case per pallet x 3 total pallets." Dkt. 41 ¶¶ 25-26, and Dkt. 41-3 at 2. Additionally, North Costa requested, and 115-California agreed, that the respirator masks were to be individually wrapped and separated by plastic sealing. *Id.* ¶ 51. This was essential because North Costa's customers planned to sell the masks at retail stores in Puerto Rico, which required masks be individually wrapped. *Id.* ¶¶ 51–52; Dkt. 41-12 at 2. North Costa even requested a photograph of the individually wrapped masks, which Armstrong sent. Dkt. 41 ¶ 55; Dkt. 41-12 at 2–3, 12. The masks were to be delivered three days after payment was received. Dkt. 41-3 at 1. 115-California represented that, if the credit card payment was processed on April 16, the masks would be ready for pickup by April 23, at the latest. Relying on 115-California's representation, North Costa completed the credit card authorization forms. *Id.* ¶¶ 27-41; Dkt. 41-3.

115-California instructed that the payment was be issued to its processing agent, Landers Accounting & Tax Services (Landers), so the order could be "placed sooner than later." Dkt. 41 ¶ 35; Dkt. 41-3 at 4–5. North Costa then authorized two credit card charges for the amounts of $100,000 and $15,200, for a total of $115,200. However, on April 17 and April 18, Landers refunded North Costa's Visa and American Express (Amex) credit cards for the charges. Dkt. 41 ¶¶ 42–46. North Costa asked Hoover and Armstrong about the unexplained refunds, and the men responded stating they were having "issues" with their processing agent. *Id.* ¶¶ 47–48. Several subsequent attempts were then made to charge North Costa's credit cards, but Landers refunded the money without any explanation. *Id.* ¶ 50. The credit card payments cleared on April 27; however, 115-California then said that Landers had placed a 90-day hold on the funds. *Id.* ¶¶ 56–57. 115-California told North Costa it would need to pay via wire transfer in order to avoid a

monthslong delay in receiving the masks and, given its own commitments to buyers, North Costa obliged. *Id.* ¶¶ 58–59. On April 28, 115-California requested that the money be wired to an account owned by 115-Texas and North Costa paid $90,000 via wire transfer while Landers recharged the remaining $25,000 to North Costa's Amex account. *Id.* ¶¶ 61–63. Dkt. 41-12 at 5, 17.

115-California failed to deliver the masks within the promised delivery time and North Costa repeatedly demanded delivery via email, phone calls, texts, and WhatsApp messages. *Id.* ¶¶ 68–73. On May 11, North Costa requested a refund and Armstrong agreed to provide a full refund the following day. *Id.* ¶¶ 74–77; Dkt. 41-5; 41.6. However, both 115-California and 115-Texas failed to refund North Costa. Instead, on May 14, 115-California informed North Costa that the masks were ready to be picked up. *Id.* ¶ 80. On May 20, Magic Transport, a logistics company, delivered the goods to North Costa in San Juan, Puerto Rico. *Id.* ¶ 82. Unfortunately, the masks did not match the specifications agreed to by the parties, were not individually wrapped, and did not have the manufacturing documentation required for sale in the United States. *Id.* ¶¶ 83–89; Dkt. 41-7; 41-8.

On May 26, 2020, after counsel for North Costa sent a letter demanding full reimbursement, Armstrong responded saying, "[i]f there's no issues with the product, I will refund their money plus cover $3,000 in shipping cost." *Id.* ¶¶ 94–98; Dkt. 41-3. 115-Texas arranged for the masks to be returned to its warehouse and confirmed that it received them. *Id.* ¶¶ 99–101. Because North Costa, did not receive a refund, it subsequently disputed the $25,000 Amex charge. *Id.* ¶¶ 102–103. After contacting the parties, Amex refused to cancel the transaction and told North Costa to work directly with 115-California and 115-Texas to resolve the dispute. *Id.* ¶ 112. After various unsuccessful attempts to obtain reimbursement throughout the summer of 2020, North

Costa filed this lawsuit and refiled its dispute with Amex. *Id.* ¶¶ 115–133; 137. This time, Amex approved North Costa's request and refunded it $25,000. *Id.* ¶ 138.

## DISCUSSION

### *Jurisdiction*

Plaintiff maintains this court has diversity jurisdiction over their claims. Diversity jurisdiction arises in "civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000 . . . ." 28 U.S.C. § 1332(a). It requires complete diversity between all plaintiffs and all defendants, *Casas Office Machines v. Mita Copystar Am., Inc.*, 42 F.3d 668, 673 (1st Cir. 1994). Here, Plaintiff is a Puerto Rico corporation and Defendants are a California corporation, a Texas corporation, and an individual domiciled in Texas. Plaintiff alleges damages exceeding $100,000. Dkt. 41. This court thus has diversity jurisdiction.

However, the jurisdiction inquiry does not end there. Plaintiff must also show that the court has personal jurisdiction over each non-resident defendant. "To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). Puerto Rico's long-arm statute has been construed to extend "as far as the Federal Constitution permits." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994). Thus, so long as defendants have sufficient minimum contacts with Puerto Rico to satisfy constitutional due process, this court may assert jurisdiction over them. Minimum contacts in this circuit consists of three distinct elements: relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). Each prong shall be discussed in turn.

### A. Relatedness

"The relatedness prong ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single contact with that forum that is wholly unrelated to the suit at issue." *United States v. Swiss Am. Bank, Ltd*., 274 F.3d 610, 623 (1st Cir. 2001). Relatedness requires that the dispute between the parties "arise out of, or be related to, the defendant's in-forum activities." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). The relatedness prong is a flexible standard that "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Id.* Where the defendant's "forum-related activity is itself the cause and object of the lawsuit," the relatedness inquiry is satisfied. *Pritzker*, 42 F.3d at 61. The conduct need not be a "strict" proximate cause, but "a broad 'but-for' argument is generally insufficient." *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005).

Here, Defendants knew Plaintiff was located in Puerto Rico and repeatedly communicated with Plaintiff via phone calls, email, text messages, and WhatsApp messages. Dkt. 41 ¶ 13 & Dkt. 41-11–15. These communications, and defendants' failure to fulfill promises made within them, form the basis for Plaintiff's breach of contract and fraud claims. Because the documents constituting defendants' forum-related contacts are the subject of this lawsuit, defendants' contacts with Puerto Rico are thus related to North Costa's dispute with the defendants. *See Pritzker*, 42 F.3d at 61.

### B. Purposeful Availment

Next, the plaintiff must show that the defendants' contacts with the forum state constitute purposeful availment of the benefits and protections afforded by the forum state's laws. *See*

*Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007). The purposeful availment requirement is meant to ensure that "jurisdiction is not based on merely 'random, isolated or fortuitous' contacts with the forum state." *Id.* (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995)). Two key concepts here are voluntariness and foreseeability. *Adelson*, 510 F.3d at 50. The defendant's contacts with the forum state must be voluntary and "not based on the unilateral actions of another party." *Id.* Additionally, the defendant's contacts must be such that it is foreseeable that she may be called to answer in the forum state's courts. *Id.*

Jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). However, placing one's products into the stream of commerce and "mere awareness" that they may end up in the forum state does not constitute purposeful availment. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 683 (1st Cir. 1992). Similarly, sale by an "independent distributor" in the forum state generally does not constitute contacts by the manufacturer. *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 295 F.3d 59, 63 n.3 (1st Cir. 2002). Something more is needed to show defendant purposefully engaged in activities directed at the forum state, such as: designing the product for the forum state, advertising in the forum state, establishing channels for providing regular advice to forum-state customers, or working with a distributor who specifically agreed to serve the forum state. *Boit*, 967 F.2d at 683 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (O'Connor, J, plurality opinion)).

Here, Defendants agreed to send 48,000 KN95 masks to North Costa after arranging the transaction with North Costa over various days in a WhatsApp chat titled "Kn 95 for PR." Dkt. 41-12. Defendants were aware that North Costa planned to sell the masks in Puerto Rico because they shipped the masks to North Costa in Puerto Rico and North Costa made clear that it wanted

the masks to be individually wrapped, as was required for retail sale in Puerto Rico. Dkt. 41-12. Because they shipped 48,000 masks to Puerto Rico, and knew the ultimate buyers of the masks were Puerto Rico residents, Defendants purposely availed themselves of Puerto Rico such that they could reasonably expect to be haled into court here. *See Levin v. Harned*, 304 F. Supp. 2d 136, 151 (D. Mass. 2003) (holding New York and California art dealers who shipped alleged antiques to Massachusetts, and knew that ultimate purchasers lived there, purposely availed themselves of that forum).

### C. Reasonableness

Once plaintiff has established minimum contacts between the defendant and the forum state, it must be shown that exercising jurisdiction is reasonable. *Burger King*, 471 U.S. at 477. This is determined by analyzing the so-called "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Ticketmaster-New York, Inc.*, 26 F.3d 201 at 209. The First Circuit has noted that where minimum contacts exist, the gestalt factors generally will not preclude jurisdiction. *Cambridge Literary*, 295 F.3d at 66.

Here, though Defendants are based in Texas and California, that fact alone does not make appearing in Puerto Rico overly burdensome. "[M]ounting an out-of-state defense most always means added trouble and cost," *BlueTarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 83 (1st Cir.2013), but modern travel "creates no especially ponderous burden for business travelers," *Pritzker*, 42 F.3d at 64. "For this type of burden to affect the analysis, the defendant must show that it is "special or unusual." *C.W. Downer & Co.*, 771 F.3d 59 at 70. Defendants made no such showing. Thus, this factor favors Plaintiff.

Next, Puerto Rico has a substantial interest in adjudicating this dispute. The product at issue, KN95 masks, were to be shipped to Puerto Rico for use by its citizens during the Covid-19 pandemic. Plaintiff, a Puerto Rico corporation, brought its cause of action under Puerto Rico laws regarding breach of contract, fraud, and the covenant of good faith and fair dealing. Thus, this factor is easily satisfied.

Third, North Costa has an interest in obtaining convenient and effective relief in its own state. Defendants have the burden of showing there is a more convenient forum and have not done so. *See. Portugues v. Venable LLP*, 497 F. Supp. 2d 295, 300 (D.P.R. 2007).

The last two factors, the judicial system's interest in the most effective resolution and the common interests of sovereigns in promoting substantive social policies, are neutral. Puerto Rico, Texas, and California could all effectively resolve this controversy and all three have an interest in protecting residents and providing a forum in which to resolve disputes.

Because three factors favor Plaintiff and two are neutral, the exercise of jurisdiction is reasonable. Because Plaintiff has satisfied all three prongs of the personal jurisdiction test, the exercise of jurisdiction Puerto Rico does not offend the notions of fair play and substantial justice and, therefore, does not violate the Due Process Clause.

**Default Judgment**

### *Breach of Contract*

Pursuant to Article 1054 of the Puerto Rico Civil Code, a party seeking to prove breach of contract must show the existence of a valid contract and a breach by one of the parties to that contract. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 152 (D.P.R. 2007). A valid contract requires consent of the parties, a definite object which is the subject of the contract, and the cause for the obligation which may be established. 31 L.P.R.A. § 3391. "Where a party fails to uphold

or abide by the contract's essential obligations, such failure will be deemed a breach of the contract." *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 31 (1st Cir. 2012).

Because of Defendants' defaults, North Costa's facts are not in dispute. North Costa alleged that it entered a valid contract with 115-California and 115-Texas to buy 48,000 individually wrapped KN95 masks to be delivered within three days of a $115,000 payment. Dkt. 63 at 22. North Costa repeatedly emphasized that the masks needed to be individually wrapped for retail sale. Dkt. 41-12. Defendants delivered the masks 23 days after receiving payment from North Costa and the masks were not individually wrapped. Dkt. 41 ¶¶ 56, 82; *Id.* ¶ 86. North Costa has thus alleged a valid contract existed between it and 115-California and 115-Texas, entered into with mutual consent, concerning a definite object, and supported by consideration. Further, it has alleged 115-California and 115-Texas breached the contract by failing to deliver the masks according to the agreed upon timetable and specifications that North Costa emphasized were essential to its agreement.

### *Fraud*

North Costa next alleges that Defendants engaged in deceit in the inducement of a contract, or dolo, in violation of 31 L.P.R.A. § 3408. To state a valid claim under this statute, plaintiffs must allege "(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud." *Feliciano-Munoz v. Rebarber-Ocasio*, 970 F.3d 53, 64 (1st Cir. 2020).

Here, North Costa argues that Defendants made at least three false representations, citing promises regarding delivery time, product specifications, and reimbursement. Dkt. 63 at 22. North Costa further alleges that it relied on these promises by paying for the promised merchandise and suffered injury as a result because it is still waiting on a $90,000 refund. *Id.* Further, North Costa

argues that "Defendants' intent to defraud is evident from their multiple representations and by their insistence of conditioning full reimbursement—even after being in possession and having inspected the merchandise—upon North Costa withdrawing their dispute with AMEX." *Id.*

However, North Costa does not address whether its reliance was "reasonable and foreseeable," as required by 31 L.P.R.A. § 3408. "[I]n determining whether to permit invalidation of a contract on the basis of dolo, Puerto Rico courts place considerable weight on the education, social background, economic status, and business experience of the party seeking to avoid the contract." *Feliciano-Munoz v. Rebarber-Ocasio*, 970 F.3d 53, 63 (1st Cir. 2020) (quoting *Citibank Glob. Markets, Inc. v. Rodríguez Santana*, 573 F.3d 17, 29 (1st Cir. 2009)). "The cases in which a party has been held to a contract by virtue of that party's sophistication involve a lack of evidence of bad faith on the part of the defendant, a plaintiff that is a sophisticated business entity, or both." *Estate of Berganzo-Colón ex rel.Berganzo v. Ambush*, 704 F.3d 33, 42 (1st Cir. 2013).

Nevertheless, Defendants' bad faith is readily apparent. As discussed, the masks arrived twenty days late without a legitimate explanation. Further, North Costa told Defendants that the masks needed to be individually wrapped for retail sale and requested pictures as well of a sample shipment of masks to confirm that the masks would be shipped accordingly. Dkt. 41-12. Defendants complied by sending photos of individually wrapped masks and sending sample masks that were individually wrapped. *Id.*; Dkt. 41 at 36. Nevertheless, when the order of masks arrived, they were not individually wrapped and thus could not be sold at retail. *Id.* at 37. North Costa thus performed its due diligence and had every reason to expect that the masks would arrive individually wrapped, as promised. When that proved untrue, Defendants told North Costa they could return the masks and receive a full refund. North Costa returned the masks, but Defendants never refunded its money. *Id.* at 38. Because the record establishes all four elements necessary to

state a fraud claim under 31 L.P.R.A. § 3408 North Costa has thus alleged a valid claim under this statute.

### Good Faith and Fair Dealing

North Costa originally requested $30,000 in damages for defendants' violation of the implied covenant of good faith and fair dealing under Puerto Rico law. *See* 31 L.P.R.A. § 3375. Dkt. 41 at 39–40. However, North Costa omitted that request from its Motion for Default Judgment. Dkt. 63. Because North Costa presented no arguments regarding this claim, it has not alleged a valid claim under this statute.

### Liability of the Parties

Plaintiff must demonstrate that all defendants are liable for the alleged conduct. The purchase order was made to, and the merchandise was shipped from, 115-California. Defendants requested that the payment be made to 115-Texas, and North Costa complied. When North Costa asked to return the masks, Defendants shipped them from Puerto Rico to 115-Texas. Dkt. 41 ¶¶ 99-101. Thus, both entities were parties to the contract and participated in the breach and fraud.

North Costa also argues Armstrong is liable in his individual capacity because he himself conducted the fraud. "[R]egardless of whether a corporate officer was acting as an agent of his corporation, he 'is liable for torts in which he personally participated.'" *Colon v. Blades*, 914 F. Supp. 2d 181, 190 (D.P.R. 2011) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir.1980). Where "the directors or officers use the corporation to commit fraud, courts will 'pierce the corporate veil' and hold those officers or directors personally liable." *Wadsworth, Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 322 (D.P.R. 1996).

Here, Armstrong personally assured North Costa that masks would be individually wrapped. When North Costa realized they were not, and demanded reimbursement, he said that, if

there were no issues with the product, he would "refund [North Costa's] money plus cover $3,000 in shipping cost." Dkt. 41 ¶¶ 94-98; Dkt. 41-13. As discussed, North Costa then reasonably relied on these representations and suffered as a result. Because Armstrong perpetuated the fraud, he is personally liable for it.

**Damages**

Lastly, North Costa argues that no hearing is required to determine damages in this matter. Plaintiff must establish the extent of the damages resulting from the defendant's violations. *See Eisler*, 535 F.2d at 153–54. Before entering a default judgement, the court may conduct hearings or make referrals to conduct an accounting; determine the amount of damages; buttress any allegation with evidence; and investigate further any other matter. Fed R. Civ. P. 55(b)(2). This hearing or referral is to be taken as a tool, not a requisite, for the determination of damages. *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 436 (1st Cir. 2015). Additionally, the court may also use the facts contained on the record. *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir. 1988). "It is settled that, if arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind." *Id*.

Further, where the amount claimed is a liquidated sum or ascertainable through mathematical calculation, a district court can forego a Rule 55(b)(2) hearing "even in the face of apparently unliquidated claims." *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 21 (1st Cir. 2003). A court may rely on "documentary evidence . . . or detailed affidavits" to determine the amount of economic damages. *Id. (*quoting *Dundee Cement Company v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). The owner or officer of a business may offer his opinion regarding the amount of lost profits as long as the opinion is based on personal knowledge and supported by objective evidence. *Ho Myung Moolsan, Co. v. Manitou*

*Mineral Water, Inc.*, No. 07-CV-7483, 2010 WL 4892646, at *10 (S.D.N.Y. Dec. 2, 2010), aff'd, 501 F. App'x 85 (2nd Cir. 2012).

Under Puerto Rico law, calculation of lost profits "must at least rest on a reasonable basis and not on mere speculation or guess." *Computec Sys. Corp. v. Gen. Automation, Inc.*, 599 F. Supp. 819, 827 (D.P.R. 1984) (citing *White Star Bus Line, Inc. v. Glenn Falls Indem. Co.*, 60 D.P.R. 852, 861 (1942)). Even upon default, a plaintiff still bears the burden of proving damages with reasonable certainty. *See Rosado Sostre v. Turabo Testing, Inc.*, 364 F.Supp.2d 144, 148 (D.P.R. 2005).

Here, North Costa alleges that Defendants never reimbursed it for $90,000 of its $115,000 payment for the masks nor for the $3,161.34 it paid for shipping the masks to Puerto Rico. Further, it alleges lost profits totaling $25,680.00 based on contracts it made to sell the masks that it could not perform due to Defendants' breach. Where determining damages "involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind." *HMG Property Investors, Inc.* 847 F.2d at 919. (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

North Costa argues that it is entitled to $118,841.34. North Costa has submitted evidence that it contracted to buy 48,000 KN95 masks from Defendants for $2.40 per mask, Dkt. 41-3, was billed $3,161.34 for 48,000 masks to be shipped to Puerto Rico, Dkt. 63-1 at 4, and that it contracted to sell at least 48,000 masks to four different buyers at $3.00 per mask. *Id.* at 5–8. North Costa calculated its expected revenue by multiplying the number of masks (48,000) times the sales price per unit ($3.00) for a gross revenue of $144,000. Then it computed the cost of acquiring the masks by adding the cost per mask ($2.40) plus the shipping cost per mask. It calculated the shipping cost per mask by dividing the total cost of shipping ($3,161.34) by the number of masks

(48,000) for a shipping cost per mask of ($.065). Adding the cost per mask and the shipping cost per mask yielded a total cost per mask of $2.465. This figure, multiplied by the number of masks (48,000) masks is $118,320. The amount of lost profits is the difference between the gross income expected from selling the masks ($144,000) and the cost of acquiring them ($118,320), which totals $25,680. North Costa is thus entitled to damages for the $90,000 payment for masks that Defendants never reimbursed after North Costa returned the masks, the $3,161.34 shipping cost that it incurred to transport the masks to Puerto Rico, and $25,680 for lost profits that it incurred as a result of Defendants' breach. This totals $118,841.34. North Costa is also entitled to post-judgment interest at 5.00%. from the date of entry of the judgment until said judgment is satisfied. 32A L.P.R.A. App.V, R. 44.3.

## CONCLUSION

For the above reasons, default judgment is **GRANTED.** Judgment will be entered for North Costa against 115-California, 115-Texas, and Armstrong in the amount of **$118,841.34**, plus post-judgment interest at a rate of 5.00%.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 9th day of September, 2022.

                                                *S/ Bruce J. McGiverin*
                                                BRUCE J. MCGIVERIN
                                                United States Magistrate Judge